FILED

2008 Feb-18  PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SUSAN G. PITTS, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Case No. 2:07-CV-02248-JEO** |
| **FISERV, INC. D/B/A BILLMATRIX CORPORATION, FISERV SOLUTIONS, INC.** | § § § § | |
| **Defendants.** | § § | |

---

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S CLASS ACTION COMPLAINT
## AND BRIEF IN SUPPORT

---

Michael P. Lynn, P.C. (*pro hac vice*)
Texas Bar No. 12738500
John Volney (*pro hac vice*)
Texas Bar No. 24003118
Amanda R. Tyler (*pro hac vice*)
Texas Bar No. 24047011
**LYNN TILLOTSON & PINKER, L.L.P.**
750 N. St. Paul Street, Suite 1400
Dallas, Texas  75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

William H. Morrow
Jacob M. Tubbs
**LIGHTFOOT FRANKLIN WHITE, LLC**
The Clark Building
400 20th Street North
Birmingham, AL 35203-3200
(205) 581-0761 Telephone
(205) 380-9161 Facsimile

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

I.      INTRODUCTION ............................................................................................ 1

II.     RELEVANT BACKGROUND ....................................................................... 2

III.    STANDARD.................................................................................................... 3

IV.     ARGUMENT AND AUTHORITIES............................................................. 4

     A.    FACTA's truncation requirements are intended to prevent identity
         theft by the taking of sensitive credit card information from paper
         receipts.................................................................................................... 4

     B.    Pitts, who seeks to apply FACTA's truncation requirement to an
         online receipt she allegedly received after an internet transaction,
         has failed to state a claim for relief under the plain, unambiguous
         language of the statute. ........................................................................... 7

          1.    Pitts has failed to state a claim because she has not alleged
              that Defendants "printed" prohibited information "upon"
              a receipt. ...................................................................................... 7

          2.    Pitts has failed to state a claim because she has not alleged
              that she was provided a receipt "at the point of sale or
              transaction." ............................................................................... 9

          3.    Plaintiff has failed to state a claim because she has not
              alleged that the receipt was printed by a "cash register or
              other machine or device." ........................................................ 12

          4.    Reading the statute as a whole, the statute only applies to
              receipts that are provided in hard-copy form. .......................... 14

     C.    Aside from the plain language of the statute itself and its legislative
         history, federal agencies charged with enforcing FACTA have only
         sought to enforce FACTA's truncation requirements with regard to
         electronically printed paper receipts................................................... 18

V.      CONCLUSION............................................................................................. 20

CERTIFICATE OF SERVICE ............................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007)........................................ 8

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ......................................... 4

*CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217 (11th Cir. 2001)............ 12

*Dister v. Apple-Bay East, Inc.*, No. C 07-01377 SBA,
    2008 WL 62280 (N.D. Cal. Jan. 4, 2008)....................................................... 5

*Ehrheart v. Bose Corp.*, No. 07-350,
    2008 WL 64491 (W.D. Pa. Jan. 4, 2008) ....................................................... 5

*Ehrheart v. Verizon Wireless*, No. 07-1165,
    2007 WL 4377681 (W.D. Pa. Dec. 11, 2007) ................................................ 5

*FMC Corp. v. Holliday*, 498 U.S. 52 (1990) ............................................................. 8

*Follman v. Village Squire, Inc.*, No. 07 C 3767,
    2007 WL 4522614 (N.D. Ill. Dec. 18, 2007).................................................. 5

*Gamble v. PinnOak Res., LLC*, 511 F.Supp.2d 1111 (N.D. Ala. 2007) .................. 3

*Garfield v. NDC Health Corp.*, 466 F.3d 1255 (11th Cir. 2006)............................. 8

*Grabein v. 1-800-Flowers.com, Inc.*, No. 07-22235-CIV,
    2008 WL 343179 (S.D. Fla. January 29, 2008) ........................................... 18

*Gueorguiev v. Max Rave, LLC*, ___ F. Supp. 2d ___,
    2007 WL 4259469 (N.D. Ill. Nov. 30, 2007).................................................. 5

*Halperin v. Interpark Inc.*, No. 07 C 2161,
    2007 WL 4219419 (N.D. Ill. Nov. 29, 2007) ................................................. 5

*Harris v. Wal-Mart Stores, Inc.*, No. 07-CV 2561,
    2007 WL 3046162 (N.D. Ill. Oct. 10, 2007) ......................................... 17, 18

*Hile v. Buth-na-Bodhaige, Inc.*, No. C 07-00791 JSW,
 2007 WL 4410774 (N.D. Cal. Dec. 14, 2007).................................................. 5

*In re Paschen*, 296 F.3d 1203 (11th Cir. 2002) ........................................................ 7

*King v. Movietickets.com*, Case No. 07-22119-CIV
 (S.D. Fla. February 13, 2008)...................................................... 4, 8, 9, 13, 18

*McDermott Intern., Inc. v. Wilander*, 498 U.S. 337 (1991)..................................... 11

*Negonsott v. Samuels*, 507 U.S. 99 (1993)............................................................... 15

*Pacer v. Rockenbach Chevrolet Sales, Inc.*, No. 07 C 5173,
 2007 WL 4109291 (N.D. Ill. Nov. 19, 2007).................................................. 5

*Ramirez v. MGM Mirage, Inc.*, 524 F. Supp. 2d 1226 (D. Nev. 2007) .................... 5

*Saurage v. Rave Reviews Cinemas, LLC*, No. 07-528-JJB-CN,
 2008 WL 205342 (M.D. La. Jan. 23, 2008) .................................................... 5

*Troy v. Red Lantern Inn*, No. 07 C 2418,
 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007)...................................................... 5

*United States v. Steele*, 147 F.3d 1316 (11th Cir. 1998) (en banc).......................... 8

*Vasquez-Torres v. Stubhub, Inc.*, No. CV 07-1328,
 2007 U.S. Dist. LEXIS 63719 (C.D. Cal. July 2, 2007)................... 16, 17, 18

*Watts v. Florida Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007)............................... 3, 4

## **Other Authorities**

15 U.S.C. § 1681c .......................................................... 1, 4, 5, 7, 8, 9, 10, 12, 15, 18

15 U.S.C. § 7002 ..................................................................................................... 12

15 U.S.C. § 7031 ..................................................................................................... 12

Fed. R. Civ. P. 12(b)(6)......................................................................................... 3, 4

*H.R. 2622 Fair and Accurate Credit Transactions Act of 2003 Hearing
Before the H. Comm. on Fin. Svcs.*, July 9, 2003, 108th Cong. 115 (2003) .. 5

*RB 37-13*, Dep't of Treasury,
Office of Thrift Supervision at 1300.14 (Feb. 23, 2006)............................. 19

MERRIAM-WEBSTER COLLEGIATE DICTIONARY 927 (10th ed. 1995) ................ 8, 15

THE AMERICAN HERITAGE DICTIONARY
OF THE ENGLISH LANGUAGE (4th ed. 2000) ................................................. 10

*The Growing Problem of Identity Theft and Its Relationship to the Fair Credit
Reporting Act: Hearing Before the S. Comm. on Banking, Housing, and
Urban Affairs*, June 19, 2003, 108th Cong. 78 (2003) ................................... 6

*Slip Showing?  Federal Law Requires All Business to Truncate
Credit Card Information on Receipts*, FTC, May 2007 ............................... 18

TO THE HONORABLE COURT:

Defendants Fiserv, Inc. d/b/a BillMatrix ("BillMatrix") and Fiserv Solutions, Inc. ("Fiserv") (collectively, "Defendants") move the Court to dismiss Plaintiff's Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), as follows:

## I.     <u>INTRODUCTION</u>

This case is a putative class action brought by Plaintiff Susan G. Pitts ("Pitts") against Defendants for alleged violations of the truncation requirements of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C.§ 1681c. Pitts alleges that Defendants violated 15 U.S.C. § 1681c(g) by printing more than the last five digits of Pitts' credit card number and the expiration date on Pitts' credit card on what Pitts describes as an "electronically printed receipt" that flashed on Pitts' computer screen when she paid an electricity bill through Defendant BillMatrix's online bill payment service.

The Court should dismiss Pitts' Class Action Complaint because Pitts has failed to state a claim for violation of FACTA's truncation requirements.   As explained below, FACTA's truncation requirements do not apply to receipts provided for internet-based transactions.   Instead, as is clear from the plain language of the statute and from its legislative history, FACTA's truncation requirements only apply to physical, paper receipts that are electronically printed

by a merchant using a "cash register or other machine or device that electronically prints receipts for credit card or debit card transactions" and that are "provided to the cardholder at the point of sale or transaction."

Because Pitts has not alleged that Defendants "printed" a receipt using a "cash register or other machine or device that electronically prints receipts for credit card or debit card transaction," much less that Defendants provided the receipt to Pitts "at the point or sale or transaction," Pitts' FACTA claim fails as a matter of law and should be dismissed.

## II.    RELEVANT BACKGROUND

Plaintiff Susan G. Pitts is a resident of Birmingham, Alabama.[1]    In her complaint, Pitts alleges that Defendants violated FACTA's credit card truncation requirements by providing her with an online receipt that contained more than the last five digits of her credit card number and the credit card's expiration date.[2] Pitts alleges that this violation occurred when she paid her electricity bill on November 5, 2007, through Defendants' payment website.[3]

Importantly, Pitts does not allege that Defendants actually "printed" prohibited credit card information "upon any receipt" via a cash register or other machine or device that electronically prints receipts.    Nor does Pitts allege that

---

[1]    Complaint at ¶ 3.

[2]    *Id.* at ¶¶ 11-12.

[3]    *Id.*

Defendants actually provided an "electronically printed receipt" to her at the point of sale or transaction, much less that Defendants emailed a "receipt" to her email account.  Instead, Pitts alleges that "Fiserv creates an electronic transaction with customers and creates a receipt that is generated by Fiserv and/or BillMatrix, via their secure website, and printed out with each transaction ***by the customer***."[4]  This online receipt, Pitts continues, "[was] intended and expected by Fiserv ***to be printed and used by the consumer*** in the same manner as any consumer transaction."[5]

Based on the foregoing, Pitts has asked the Court to certify a class of consumers against Defendant and is seeking statutory damages, injunctive relief, costs of suit, and attorneys fees.[6]

## III.   **STANDARD**

A complaint should be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating a motion to dismiss for failure to state a claim, courts accept the facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiffs.  *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007); *Gamble v. PinnOak Res., LLC*, 511 F.Supp.2d 1111, 1125 (N.D. Ala. 2007).  "[A] plaintiff's obligation

---

[4]     *Id.* at ¶ 4 (emphasis added).

[5]     *Id.* (emphasis added).

[6]     *Id.* at ¶¶ 33-48.

---

to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1965. To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must state a claim "with enough factual matter (taken as true) to suggest the required element." *Watts*, 495 F.3d at 1295 (citing *Twombly* at 1965). In other words, "the standard is one of 'plausible grounds to infer.'" *Id*.

## IV.   ARGUMENT AND AUTHORITIES

### A.   FACTA's truncation requirements are intended to prevent identity theft by the taking of sensitive credit card information from paper receipts.

In 2003, Congress passed FACTA to add several consumer protection provisions to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). One identity theft provision added by Congress requires merchants and other persons that accept credit or debit cards to truncate the card information printed on receipts given to the cardholder at the point of sale or transaction.[7]   Under this

---

[7]   Fair and Accurate Credit Transactions Act of 2003, § 113, 15 U.S.C. § 1681c(g)(1). Since the statute went into effect, plaintiffs have filed numerous class actions seeking class certification and statutory damages for violation of the statute. So far, of the approximately 30 reported and unreported decisions available through Westlaw and Lexis, only three of those cases (each unreported) involved internet transactions. These cases are discussed in detail below. As of today's date, Defendants have identified one district court opinion in which the court dismissed a claim similar to the claims brought

provision, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."[8]  To give merchants sufficient time to upgrade their hardware to meet FACTA's truncation requirements, Congress staggered the effective date of the truncation requirements based on how long a "cash register or other machine or device that electronically prints receipts" had been in use.[9]

When discussing FACTA's truncation requirements, Congress specifically noted its intent to prevent identity theft from the theft of paper credit and debit card

---

here.  *King v. Movietickets.com*, No. 07-22119-CIV (S.D. Fla. February 13, 2008) (attached here as Exhibit A).

    The remaining FACTA cases all involved paper receipts.  *See, e.g., Saurage v. Rave Reviews Cinemas, LLC*, No. 07-528-JJB-CN, 2008 WL 205342 (M.D. La. Jan. 23, 2008); *Dister v. Apple-Bay East, Inc.*, No. C 07-01377 SBA, 2008 WL 62280 (N.D. Cal. Jan. 4, 2008); *Ehrheart v. Bose Corp.*, No. 07-350, 2008 WL 64491 (W.D. Pa. Jan. 4, 2008); *Follman v. Village Squire, Inc.*, No. 07 C 3767, 2007 WL 4522614 (N.D. Ill. Dec. 18, 2007); *Hile v. Buth-na-Bodhaige, Inc.*, No. C 07-00791 JSW, 2007 WL 4410774 (N.D. Cal. Dec. 14, 2007); *Ehrheart v. Verizon Wireless*, No. 07-1165, 2007 WL 4377681 (W.D. Pa. Dec. 11, 2007); *Troy v. Red Lantern Inn*, No. 07 C 2418, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007); *Ramirez v. MGM Mirage, Inc.*, 524 F. Supp. 2d 1226 (D. Nev. 2007); *Gueorguiev v. Max Rave, LLC*, ___ F. Supp. 2d ___, 2007 WL 4259469 (N.D. Ill. Nov. 30, 2007); *Halperin v. Interpark Inc.*, No. 07 C 2161, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007); and *Pacer v. Rockenbach Chevrolet Sales, Inc.*, No. 07 C 5173, 2007 WL 4109291 (N.D. Ill. Nov. 19, 2007).

[8]    15 U.S.C. § 1681c(g)(1).  The statute's truncation requirements do not apply to transactions where the receipt is recorded by handwriting or by an imprint or copy of the card.  15 U.S.C. § 1681c(g)(2).

[9]    15 U.S.C. § 1681c(g)(3); *see also H.R. 2622 Fair and Accurate Credit Transactions Act of 2003 Hearing Before the H. Comm. on Fin. Svcs.*, July 9, 2003, 108th Cong. 115 (2003), available at http://financialservices.house.gov/media/pdf/108-47.pdf (statement of Credit Union National Association, Inc.) ("There will be equipment costs associated with compliance that will in turn be passed on to our members.  For this reason, we commend you for including a reasonable time period for purposes of compliance."); *Id.* at 219 (statement of the Federal Trade Commission) ("The Commission supports requiring truncation, but recommends that the law be phased in over a period of time to allow for the replacement of existing equipment.").

---

receipts. Senator Charles E. Schumer remarked: "We should truncate credit card receipts. Some companies do this. In other words, the receipt, the part you discard, does not show the whole number on there so people cannot go into the garbage can, pick it up, and duplicate your credit card number."[10] A witness at the hearing gave this example of why legislation was needed to require merchants to truncate credit card information on printed receipts:

> Many merchants print your entire credit card number on merchandise receipts. Unfortunately, this is an excellent way for thieves to gather information and enjoy a shopping spree at your expense. The scenario: It is a busy time, perhaps a white sale or during the holidays. As Mary wanders from store to store, she doesn't notice the gray-haired woman walking behind her. ***She also doesn't notice the woman slipping her hand into Mary's purchase bag and pulling out the receipt for the sweater she bought a few minutes ago.*** By the time Mary gets home a few hours later, this woman (minus the gray-haired wig) has hit two nearby shopping centers and charged about $3,000 in merchandise to Mary's account.[11]

This legislative history, coupled with the plain language and structure of the statute, indicates that Congress was concerned with the potential for identity theft when sensitive credit or debit card information was printed on electronically printed paper receipts and provided to the cardholder in a traditional face-to-face credit or debit card transaction.

---

[10]   *The Growing Problem of Identity Theft and Its Relationship to the Fair Credit Reporting Act: Hearing Before the S. Comm. on Banking, Housing, and Urban Affairs*, June 19, 2003, 108th Cong. 78 (2003), available at http://a257.g.akamaitech.net/7/257/2422/23jun20031230/www.access.gpo.gov/congress/senate/pdf/108hrg/95254.pdf (statement of Senator Charles S. Schumer).

[11]   *Id.* at 180 (statement of Linda Foley, Executive Director, Identity Theft Resource Center) (emphasis added).

---

Conversely, there is no indication in the statute itself or its legislative history that Congress had any concern for regulating online transactions or that Congress intended for FACTA's truncation requirements to apply to online transactions.

**B.    Pitts, who seeks to apply FACTA's truncation requirement to an online receipt she allegedly received after an internet transaction, has failed to state a claim for relief under the plain, unambiguous language of the statute.**

Even assuming the allegations contained in Pitts' Complaint are true, Pitts has failed to state a claim for violation of FACTA's truncation requirements for the reasons set forth below.

### 1.    *Pitts has failed to state a claim because she has not alleged that Defendants "printed" prohibited information "upon" a receipt.*

To state a claim upon which relief may be granted, Pitts must allege that Defendants "printed" the proscribed credit card information "upon [a] receipt."  15 U.S.C. § 1681c(g)(1).  In her Complaint, however, Pitts has failed to allege that Defendants "printed" anything "upon any receipt" as those statutory terms are commonly used in the English language.[12]  *Id.*

In construing FACTA, the court "must begin, and often should end as well, with the language of the statute itself."  *In re Paschen*, 296 F.3d 1203, 1207 (11th Cir. 2002) (quoting *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998)

---

[12]    Instead, Pitts relies on the vague allegation that Defendants "provided Plaintiff with an electronically printed receipt" when she paid her electricity bill online.  Complaint at ¶¶ 11-12.

---

(en banc)). "When the language of a statute is unambiguous, [the court] need go no further, because [it] must presume that Congress 'said what it meant and meant what it said.'" *Id.* Courts "do this, first, by reference to the plain meaning of the statute's language, based on the words' 'ordinary, contemporary, common meaning.'" *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)). *See also FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990) ("We begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

Specifically, the "ordinary, contemporary, common meaning" of the term "print" as used in § 1681c(g)(1) is given in Merriam-Webster's Dictionary as "to impress something in or on" or "to stamp (as a mark) in or on something,."[13]   In her Complaint, Pitts has failed to allege that Defendants "printed" (*i.e.*, impressed or stamped information) upon any receipt as that term is commonly used and understood.  Accordingly, Pitts has failed to state a claim for violation of FACTA's truncation requirements, and her Complaint should be dismissed.  *See King v.*

---

[13]     MERRIAM-WEBSTER COLLEGIATE DICTIONARY 927 (10th ed. 1995).  It is clear from the text of § 1681c(g)(1) itself that Congress intended to use "print" in its ordinary and common meaning of "to impress something in or on" or to "stamp (as a mark) in or on something" because Congress later modifies "print" in the same sentence with the prepositional phrase "upon any receipt."  By doing so, Congress has indicated its intention to use "print" in the ordinary sense of "impressing" or "stamping" information "upon" the surface of a receipt.

*Movietickets.com*, Case No. 07-22119-CIV at 10 (S.D. Fla. February 13, 2008) (dismissing FACTA claim involving internet transaction) (attached as Exhibit A).

Furthermore, Pitts has not alleged that Defendants themselves actually "printed" a receipt at all in violation of § 1681c(g)(1).  Instead, Pitts alleges that she (not Defendants) "printed" the receipt:  "Fiserv creates an electronic transaction with customers and creates a receipt that is generated by Fiserv and/or BillMatrix, via their secure website, ***and printed out with each transaction by the customer***."[14]   FACTA does not impose liability when a ***customer*** prints information upon a receipt, only when a "person that accepts credit cards or debit cards for the transaction of business" prints the prohibited information upon a receipt.  15 U.S.C. § 1681c(g)(1).  Accordingly, because Pitts has failed to allege that Defendants themselves "printed" the proscribed information "upon any receipt provided to the cardholder," Pitts has failed to state a claim upon which relief can be granted. *See Movieticket.com* at 12 (attached as Exhibit A).

### 2. *Pitts has failed to state a claim because she has not alleged that she was provided a receipt "at the point of sale or transaction."*

Additionally, Pitts' claim fails as a matter of law because she has not alleged that she was provided a receipt "at the point of the sale or transaction," as that phrase is commonly defined and understood.  15 U.S.C.  § 1681c(g)(1).

---

[14]      *Id*. at ¶4 (emphasis added).

Specifically, Congress's use of the term of art "point of the sale or transaction" indicates its intent to limit the application of the truncation requirement to receipts that merchants print from electronic cash registers or other machines or devices and provide directly to cardholders at the place where the sale or transaction takes place.[15]

"Point of sale" is a term of art that refers to the location where a sale or transaction occurs. The American Heritage Dictionary defines "point of sale" as "a business or place where a product or service can be purchased."[16] A survey of other industry definitions reveals a common theme: a "point of sale" is a physical location where a retail transaction occurs.

> "Point of sale or point of service (POS or PoS) can mean a retail shop, a checkout counter in a shop, or the location where a transaction occurs. More specifically, the point of sale often refers to the hardware and software used for checkouts—the equivalent of an electronic cash register. Point of sale systems are used in

---

[15]    There is further textual support for interpreting "the point of the sale or transaction" as limiting the statute's application to traditional face-to-face credit and debit card transactions. First, in enacting § 1681c(g)(2), Congress made sure to exempt manual credit card transactions where the receipt is handwritten or made by imprint of the card from the statute's purview. This indicates that Congress's concern was to regulate transactions where a paper receipt is generated: accordingly, where the paper receipt is printed "electronically," FACTA's requirements apply; where the receipt is generated manually, FACTA does not apply. Second, § 1681c(g)(3) indicates that Congress was concerned that merchants would have sufficient time to upgrade their "cash registers or other machine or device that electronically prints receipts" to meet truncation requirements, which further indicates Congress's interest in limiting application of FACTA's truncation requirements to face-to-face transactions where paper receipts are generated by point-of-sale terminals or other electronic devices. Finally, as noted above, internet transactions are not mentioned anywhere in the statute or its legislative history, which is yet another indication that the statute's requirements were only intended to apply to paper receipts generated in traditional face-to-face credit card transactions.

[16]    "Point of sale," THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000), available at http://www.thefreedictionary.com/point-of-sale.

---

supermarkets, restaurants, hotels, stadiums, and casinos, as well as almost any type of retail establishment."[17]

"Location in a merchant establishment at which the sale is consummated by payment for goods or services received."[18]

"A location where credit card transactions are performed with the cardholder present, such as a retail store. The card is read magnetically, and the cardholder's signature is obtained as insurance against the transaction. This is the most secure form of credit card commerce."[19]

"Capturing data at the time and place of sale. Point of sale systems use computers or specialized terminals that are combined with cash registers, bar code readers, optical scanners and magnetic stripe readers for accurately and instantly capturing the transaction. Point of sale systems may be online to a central computer for credit checking and inventory updating, or they may be stand-alone machines that store the daily transactions until they can be delivered or transmitted to the main computer for processing."[20]

"The physical location at which goods are sold to customers."[21]

With regard to terms of art like "point of sale," "[i]n the absence of contrary indication, [courts] assume that when a statutes uses such a term, Congress intended it to have its established meaning." *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 342 (1991).

---

[17]     "Point of sale," available at http://en.wikipedia.org/wiki/Point_of_sale.

[18]     "Point of sale," available at http://www.creditcards.com/credit-cards-glossary.php

[19]     "Point of sale," available at http://cardchoice.com/merchant_glossary.html

[20]     "Point of sale," available at http://www.pcmag.com/encyclopedia_term/0,2542,t=point+of+sale &i=49444,00.asp.

[21]     "POS," available at http://www.investorwords.com/3725/point_of_sale.html.

There is absolutely no indication in FACTA's legislative history or elsewhere that Congress intended to depart from the established meaning of "point of sale" as the physical location where a credit or debit card transaction takes place. Thus, by its terms, FACTA's truncation requirements cannot apply to electronic transactions performed on the internet, where no printed receipt is provided to the customer "at the point of the sale or transaction" at all.[22]

### 3.   *Plaintiff has failed to state a claim because she has not alleged that the receipt was printed by a "cash register or other machine or device."*

Pitts has also failed to state a claim for violation of FACTA because she has not alleged that her "receipt" was "electronically printed" by a "cash register or other machine or device that electronically prints receipts for credit card or debit card transactions." 15 U.S.C. § 1681c(g)(3). Specifically, FACTA's effective date, and thus the statute's applicability to any particular credit or debit card transaction, depends on the date when the "cash register or other machine or device that electronically prints receipts for credit card or debit card transactions" was first put in use. *Id.* Because Pitts has failed to allege that her "receipt" was printed

---

[22]    The inclusion of the word "transaction" in the phrase "point of sale or transaction" does not change the analysis. Congress has used the phrase "electronic transactions" in other statutes when it wanted to make clear that it was referring to internet transactions. *See, e.g.,* 15 U.S.C. §§ 7002, 7031 (referring to the Uniform Electronic Transactions Act). *See also CBS Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1226 (11th Cir. 2001) ("Where Congress knows how to say something but chooses not to, its silence is controlling.") (internal quotation omitted). In FACTA, Congress evidently included the more general "transaction" in addition to "sale" to make clear that liability may be imposed for noncompliant receipts given for the exchange of services in addition to sales of goods.

---

by one of the statute's listed devices — *e.g.*, a cash register or other machine or device that electronically prints receipts for credit card or debit card transactions — Pitts' FACTA claim should be dismissed for failure to state a claim upon which relief may be granted. *See Movieticket.com* at 12 (attached as <u>Exhibit A</u>).

In a transparent effort to plead around this provision, however, Pitts alleges that "Defendants use cash registers, **internet transactions**, or other machines or devices that electronically print receipts for credit card and debit card transactions, which are within the scope of transactions which fall under the purview of FACTA."[23] The term "internet transactions," however, is not mentioned anywhere in FACTA, and "internet transactions" cannot be interpreted as falling within the meaning of "other machines or devices" under the plain and ordinary meaning of those words.

Moreover, the sole factual basis for Pitts' FACTA claim is that Defendants displayed a "receipt" in an internet transaction conducted by Pitts, as alleged at ¶¶ 11-12 of Pitts' Complaint. Pitts does not allege that her specific transaction with Defendants involved a "cash register or other machine or device that electronically prints receipts for credit or debit card transactions," nor could she because she admits that she completed her transaction online. For that reason, Pitts' pleading in the alternative that Defendants used cash registers, machines, or

---

[23]     Complaint at ¶ 10.

other devices is not supported by the facts alleged in her Complaint, and Pitts' pleading is a misleading effort to bring her claim within the purview of FACTA when the facts of her particular transaction clearly do not fit the statute.  On this ground as well, Pitts has failed to state a claim upon which relief may be granted under the plain meaning of the statute.

### 4. *Reading the statute as a whole, the statute only applies to receipts that are provided in hard-copy form.*

The plain and unambiguous meaning of "print," "electronically printed," "point of sale or transaction," and "cash register or other machine or device" all indicate that FACTA's truncation requirements only apply to merchants and other persons who print more than the last five digits or the expiration date of a credit or debit card upon a receipt that is electronically printed by one of the listed devices. In response to this motion, Pitts may argue that the Court should read the terms of the statute more broadly to apply to Defendants' alleged displaying of a receipt online as part of an internet transaction.  Such an argument, which is contrary to the language of the statute, should be rejected.

Although Merriam-Webster's Dictionary includes an alternative definition of "print" in the context of computers to mean "PRINT OUT; *also*: to display on a surface (as a computer screen) for viewing," that secondary definition does not apply here for several reasons.  *First,* that definition cannot be considered to be the

"ordinary, contemporary, common meaning" of print since it is not the primary definition given, but rather the seventh out of a total of nine definitions.[24]  *Second,* as the definition acknowledges, the word "print" in the context of computer transactions is most commonly referred to instead as "print out" and is only secondarily meant to display on a screen.[25]  *Third,* because the statute uses the word "print" in conjunction with "upon a receipt," the substitution of this alternative meaning of "to display on a surface for viewing" for "print" would render the statute absurd in context.  *See* 15 U.S.C. § 1681c(g)(1).  This definition is rendered even more absurd when inserted for "printed" in the context of the statute's limitation to apply only to "electronically printed receipts."  If "print" meant also "to display upon a computer screen," then the term "electronically" would be entirely superfluous since "electronically printed receipts" would mean "receipts electronically displayed upon a computer screen."  *See Negonsott v. Samuels*, 507 U.S. 99, 106 (1993) (reading a statute in the only way that "gives effect to every clause and word of the statute").  Thus, the ordinary, common sense meaning of "electronically impressed or stamped" should prevail here.

Further, Defendants have only located three cases where courts have denied motions to dismiss in the context of applying FACTA to online transactions,

---

[24]     MERRIAM-WEBSTER COLLEGIATE DICTIONARY 927 (10th ed. 1995).

[25]     Common sense and experience reveals that print, when used in a computer context, refers to the former definition, given the "print" command in all word processors and web browsers.

perhaps reflecting the sentiment among prospective plaintiffs that such transactions are not within FACTA's purview.  None of these cases provide guidance for this Court.  First, in *Vasquez-Torres v. Stubhub, Inc.*, No. CV 07-1328, 2007 U.S. Dist. LEXIS 63719 (C.D. Cal. July 2, 2007), the court denied a motion to dismiss in which the claim for the violation of FACTA was based on information provided on a computer screen.  This Court should reject the reasoning of the *Stubhub* ruling.

In *Stubhub*, the California court determined that the key question was whether or not the term "print" could encompass an image appearing on a computer screen.  The court seized upon a dictionary definition of "printing" that in part read "to make an impression in or upon."  *Id.* at *7.  According to the *Stubhub* court, transmitting data to another's computer screen was sufficient to be considered printing, because it involved making an impression "on Plaintiff's computer screen including credit or debit card information...."  *Id.*

Here, this Court should reject the reasoning applied in *Stubhub*.  As set forth above, FACTA is aimed at physical receipts that customers receive in face-to-face transactions.  When the customer has discretion (as Pitts admits she had) as to whether to print her receipt and chooses to print that receipt, FACTA should not apply.  Such a case is more analogous to the cardholder who decides to write down her own credit card information, not to a customer who has a paper receipt provided to her by a merchant.

Second, in *Harris v. Wal-Mart Stores, Inc.*, No. 07-CV 2561, 2007 WL 3046162 (N.D. Ill. Oct. 10, 2007) , the plaintiff alleged that an online transaction history displayed credit card information in violation of FACTA.  In its motion to dismiss, the defendant merchant argued – as Defendants do here – that the merchant had not printed the paper in question, but that the customer had.  The *Harris* court then denied the motion to dismiss on procedural grounds, reasoning that although the defendant "may have accurately portrayed the facts of this case," it had gone beyond the plaintiff's complaint in its motion to dismiss.  Here, however, no such caution need apply.  Pitts herself alleges that she (not any Defendant) was the one who printed the "receipt" in question.  Therefore, the provisions of FACTA do not apply to Pitts' transaction.

Importantly, neither the *Stubhub* nor the *Harris* courts considered the legislative history presented here.  Thus, neither court considered that Congress discussed FACTA's truncation requirements only in the context of paper receipts, not online transactions.  The *Harris* court did not get to the merits of statutory interpretation at all.  *Harris* at *2.  The *Stubhub* court focused solely on a definition of "print" and did not consider its context with the rest of the statutory language, including "electronically printed," "point of sale," and "cash register or other machine or device."  *See Stubhub* at 3 ("Defendant relies on one dictionary definition and an Illinois district court case . . ..").

Third, the district court in *Grabein v. 1-800-Flowers.com, Inc.*, No. 07-22235-CIV, 2008 WL 343179 (S.D. Fla. January 29, 2008), recently denied a motion to dismiss a FACTA claim arising out of an online purchase of flowers that generated an electronically transmitted receipt which included plaintiff's credit/debit card expiration date.   The court's reasoning in *Grabein* is unpersuasive, however, because the court did not consider § 1681c(g) as a whole, nor does the court make any mention or account for the meaning of "print" in § 1681c(g)(3) as it relates to "cash registers and other machines or devices."   For these reasons, *Grabein* does not provide any persuasive support in this case.

Because of substantive differences in the pleading and briefing in this case, these prior decisions are neither controlling nor helpful.   The better reasoned opinion is that of the district court in *Movietickets.com*, at page 11, where the district court declines to rely on *Stubhub*, *Harris*, and *Grabein* for substantially the same reasons as are explained here.   *See* Exhibit A at 11.

**C.    Aside from the plain language of the statute itself and its legislative history, federal agencies charged with enforcing FACTA have only sought to enforce FACTA's truncation requirements with regard to electronically printed paper receipts.**

The agencies with enforcement, regulatory, or supervisory power over FACTA—the Federal Trade Commission ("FTC") and the Department of Treasury, Office of Thrift Supervision ("OTS")—have both issued directives

---

explaining and implementing the law, which directives support the interpretation that the law is only intended to apply to paper receipts generated in traditional face-to-face credit and debit card transactions. For example, in a statement made by the FTC's Bureau of Consumer Protection, Division of Consumer & Business Education in May 2007, the agency reminded businesses that "the electronically printed credit and debit card receipts you give your customers must shorten—or truncate—the account information."[26] With regard to the law's effective date, the FTC also explained that the statute was "phased in gradually, requiring merchants with newer electronic card processing machines to comply by December 2004," while giving "[m]erchants with older machines" until December 1, 2006 to comply.[27] The FTC also advised that the statute "applies only to receipts you give your customers at point of sale, not to any transaction record you retain."[28] These pronouncements support Defendants' interpretation of the statute.

The Department of Treasury's Office of Thrift Supervision ("the OTS") has similarly interpreted FACTA's truncation provision to apply to receipts printed by merchants at the point of sale or transaction. In Regulatory Bulletin 37-13, the OTS clarified the effective date provision for its regulatory staff, noting that "[f]or

---

[26]     *Slip Showing? Federal Law Requires All Business to Truncate Credit Card Information on Receipts*, FTC, May 2007, available at http://www.ftc.gov/bcp/edu/pubs/business/alerts/alt007.shtm.

[27]     *Id.*

[28]     *Id.*

Automatic Teller machines (ATMs) and Point-of-Sale (POS) terminals or other machines that were put into operation before January 1, 2005, this requirement is effective on December 4, 2006.  For ATMs and POS terminals or other machines that were put into operation on or after January 1, 2005, the effective date is the date of installation."[29]   In this directive, the OTS further clarified the statutory language "cash register or other machine or device" to refer more specifically to ATMs and POS terminals—or "point of sale" terminals—that issue electronically printed receipts at the place of the sale or other transaction.

Although the FTC has enforcement power over FACTA's truncation requirement, as it reminded merchants in its press release in May 2007, Defendants are not aware of any enforcement action that the FTC has filed to date.  Nor are Defendants aware of any pronouncement by any federal agency stating that FACTA's truncation requirements apply to online transactions.

## V.   CONCLUSION

Because Pitts has not alleged that Defendants "printed" a receipt using a "cash register or other machine or device that electronically prints receipts for credit card or debit card transaction," much less that Defendants  provided the receipt to Pitts "at the point or sale or transaction," Pitts' FACTA claim fails as a

---

[29]      *RB 37-13*, Dep't of Treasury, Office of Thrift Supervision at 1300.14 (Feb. 23, 2006), available at http://www.ots.treas.gov/docs/7/74824.pdf.

matter of law and should be dismissed.  Defendants respectfully request that this

Court dismiss Pitts' Class Action Complaint in its entirety.

Respectfully submitted,

/s/ *John Volney*

_____

Michael P. Lynn, P.C. (*pro hac vice*)
Texas Bar No. 12738500
John Volney (*pro hac vice*)
Texas Bar No. 24003118
Amanda R. Tyler (*pro hac vice*)
Texas Bar No. 24047011
**LYNN TILLOTSON & PINKER, L.L.P.**
750 N. St. Paul Street, Suite 1400
Dallas, Texas  75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

and

William H. Morrow
Jacob M. Tubbs
**LIGHTFOOT FRANKLIN WHITE, LLC**
The Clark Building
400 20th Street North
Birmingham, AL 35203-3200
(205) 581-0761 Telephone
(205) 380-9161 Facsimile

**ATTORNEYS FOR DEFENDANTS
FISERV, INC. D/B/A BILLMATRIX
CORPORATION, FISERV
SOLUTIONS, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served as shown below on counsel of record on this the 18th day of February, 2008:

> ### *Via ECF*
> William K. Bradford
> Bradford-Pitts L.L.C.
> 1130 22nd Street South, Suite 4500
> Birmingham, Alabama  35203
> (205) 939-4300 Telephone
> (205) 877-7330 Facsimile

/s/ *John Volney*

_____

John Volney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 07-22119-CIV-GOLD/TURNOFF

EDWIN KING,

     Plaintiff,

V.

MOVIETICKETS.COM,

     Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

     THIS CAUSE comes before the Court on Defendant MovieTickets.com's Motion to Dismiss [DE 11] filed on October 17, 2007. Plaintiff brought this action against Defendant under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq. Having considered the Motion, Response and Reply, along with all notices of supplemental authority, and having heard oral argument on January, 25, 2008, I grant Defendant's Motion and dismiss Plaintiff's claims.

     I.    Background

     The relevant allegations from Plaintiff's Complaint are as follows:

     Plaintiff alleges that Defendant MovieTickets.com violated 15 U.S.C. § 1681c(g), a provision of the Fair and Accurate Credit Transaction Act (FACTA). According to the Complaint, Defendant MovieTickets.com is allegedly "a person that accepts credit cards and debit cards for the transaction of business under FCRA." Compl., ¶ 5. Defendant allegedly solicits business electronically on the internet, and Defendant allegedly "creates an electronic transaction with customers and creates a receipt that is generated by

1



MovieTickets.com and printed out with each purchase by the consumer." *Id.* According to the Complaint, this receipt "is intended and expected by MovieTickets.com to be printed and used by the consumer in the same manner as any consumer transaction purchase." *Id.* Plaintiff King allegedly used Defendant's website to make a consumer transaction and "was provided with a receipt for his purchase." *Id.*

Plaintiff alleges that he used a debit or credit card issued in his name to transact business with Defendant MovieTickets.com, and Plaintiff allegedly "had the expiration date of his credit card account on the receipts provided to him by Defendant." Specifically, "[a]fter December 4, 2006, Defendant provided and/or printed the expiration date of Plaintiff's credit card or debit card on receipts provided to Plaintiff at the point of sale or transaction between Plaintiff and Defendant." *Id.* at ¶ 10. Plaintiff attaches three "receipts" to his Complaint, and the language is identical in all three.[1] According to the Complaint,

---

[1]

The parties agree that I can take judicial notice of the attachments to Plaintiff's Complaint. The entire text of one of Plaintiff's three alleged "receipts," with the credit card information redacted by Plaintiff, is as follows:

From:  customerservice@movietickets.com
Subject: MovieTickets.com Order Confirmation
Date: January 12, 2007 9:29:51 PM EST
To:    [redacted by Plaintiff]

Edwin King, Thank you for ordering tickets from MovieTickets.com!

Tracking Number: ...... 1948788377-32058588
Your Movie: .............. Children of Men ®
Showtime: ................ 10:45pm, the evening of Friday, January 12, 2007
Theater: ................... AMC Aventura 24
                      19501 Biscayne Blvd
                      Aventura, FL 33180

TICKETS CONFIRMED

2

this action violated 1681c(g). Id. at ¶ 24.

Defendant's conduct was allegedly pursuant to its policies, routine practices, procedures, and customs. Id. at ¶ 25. In addition, Plaintiff alleges that Defendant has

Tickets Purchased: .... 2

| TICKET TYPE | PRICE | QUANTITY | SUBTOTAL |
|-------------|-------|----------|----------|
| ADULT | $9.50 | 2 | $19.00 USD |

SubTotal: .......... $19.00 USD

Surcharge Total: ......$2.00 USD

Order Total: .......... $21.00 USD

PAYMENT INFORMATION
Card Type: .............VI
Card Number: .........[redacted by Plaintiff]
Expiration: ...............[redacted by Plaintiff]

Ticket Pickup Instructions: Tickets may be retrieved at the Automated Box Office (ABO), the theater box-office or Guest Services at the located where your movie is playing. You will need to bring the credit card you used to purchase the tickets in order to retrieve them. The MovieTickets.com confirmation number will not retrieve your tickets. While purchasing tickets online ensures you a ticket, seating is first come, first served. For this reason, we recommend you arrive at least 30-45 minutes before showtime.

Refund Policy: When you click on PURCHASE, your credit card will be charged at that time by the theatre's ticketing system. you will need to present the same credit card at the theatre to process any refunds, cancellations or other problems with your credit card. Service charges are not refunded for cancellations. MovieTickets.com cannot process your refund.
Additional information: Feature Presentations Start 10-15 Minutes following Published Showtimes.

If you have any questions or need additional information, you can always reach us by sending an e-mail to mailto:customerservice@movietickets.com or calling us toll free at 1-888-440-8457.

MovieTickets.com
Your Own Personal Box Office
http://www.movietickets.com

3

willfully violated § 1681c(g) because Defendant had several years to bring itself into compliance, as well as "clear advance notice and communications regarding the need for compliance." *Id.* at ¶ 6. Defendant's action allegedly subjected its customers to identity theft and credit card fraud. *Id.* at ¶ 9. Furthermore, Defendant allegedly knew that its practice violated the FCRA, or at a minimum Defendant allegedly "recklessly disregarded whether its practice contravened consumers' rights." *Id.* at ¶ 11.

Plaintiff brings this action against Defendant as a class action, but no class has yet been certified. Plaintiff alleges that he was harmed because he was exposed to an increased risk of identity theft because of Defendant's conduct. *Id.* at ¶ 27.

Defendant Movietickets.com has moved to dismiss this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

II.    Standard of Review

On a motion to dismiss, the court accepts a complaint's well-pleaded allegations as true. *Hoffend v. Villa (In re Villa)*, 261 F.3d 1148, 1150 (11th Cir. 2001). The court construes the pleadings broadly and views the allegations in the complaint in the light most favorable to the plaintiff. *Watts v. Fla. Int'l Univ., et al.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "more than mere labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Indeed, "a formulaic recitation of the elements of a cause of action will not do." *Watts*, 495 F.3d at 1295 (quoting *Bell Atlantic*, 127 S.Ct. at 1965).

4

Although the court does not analyze the probability of actual proof of the complaint's allegations on a motion to dismiss, a plaintiff must allege "'enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295. Under the law of this Circuit, the pleading must create "plausible grounds to infer." *Id.* Thus, a claim will survive a motion to dismiss if it identifies "facts that are suggestive enough to render [the element] plausible." *Id.* at 1296 (quoting *Bell Atlantic*, 127 S.Ct. at 1965).

III.  Discussion

The FACT Act amendments to the FCRA were enacted on December 4, 2003. See Pub. L. 108-159, 11 Stat. 1952 (Dec. 4, 2003). Section 113 of the FACT Act added the following to the FCRA, which is now codified at 15 U.S.C. § 1681c(g):

(g) Truncation of credit card and debit card numbers

(1) In general
Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

(2) Limitation
This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

(3) Effective date
This subsection shall become effective –
(A) 3 years after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and
(B) 1 year after December 4, 2003, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

5

15 U.S.C. § 1681c(g).

With respect to who has standing to bring a claim under the above statute, 15

U.S.C. § 1681n(a) provides the following:

> Any person who willfully fails to comply with any requirement imposed under
> this subchapter with respect to any consumer is liable to that consumer in an
> amount equal to the sum of –
>> (1)(A) any actual damages sustained by the consumers as a result of
>> the failure or damages or not less than $100 and not more than
>> $1,000;
>
> 15 U.S.C. § 1681n(a).

Although the word "print" in § 1681c(g) is not defined in the statute, the meaning of

"print" in § 1681c(g) is crucial to this case.   Plaintiff alleges that Defendant

MovieTickets.com violated § 1681c(g), and Plaintiff attaches to his Complaint three e-mails

entitled "Order Confirmation" that were sent from MovieTickets.com to Plaintiff.   These

emails allegedly contained more than 4 digits of Plaintiff's card number or the expiration

date, in violation of the statute.

Plaintiff alleges that by sending the e-mails with this card information, Defendant has

"printed" a "receipt" in violation of § 1681c(g).   There is no allegation that Defendant sent

a paper copy of this e-mail to Plaintiff.   As stated at oral argument, Plaintiff argues that he

could choose to print the e-mails himself, and that the e-mails attached to the Complaint

were in fact printed at some point in time.   Trans., 27-28.   Defendant argues that the

transmission of these e-mails, which could be printed by Plaintiff himself, does not fall

under the ambit of 1681c(g) because the e-mail transmissions were not printed receipts

that were provided to cardholders.

Several canons of statutory construction guide my analysis of these issues.   Under

the law of this Circuit, courts always begin the interpretation of a statute by looking at the

6

plain language of the statute itself. *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000). Courts "read the statute using the normal meanings of its words," while considering the entire context of the statute. *Penn v. City of Montgomery*, 381 F.3d 1059, 1062 (11th Cir. 2004) ("We do not look at one word or term in isolation, but instead we look to the entire statutory text.") In interpreting a statutory provision, courts "are not guided by a single sentence or member of a sentence, but look to the provisions of the whole law." *Snapp*, 208 F.3d at 934-935 (internal quotations omitted). To this end, canons of construction are tools which assist courts in focusing on the context of the entire statute, as opposed to looking at one word in isolation. *CBS Inc. v. Primetime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001)

Where there is no statutory definition of a term, "we look to the common usage of words for their meaning." *CBS Inc.*, 245 F.3d at 1222. As articulated by the Eleventh Circuit, where "an expansive term is used, we look for clues within the statute to help us understand the exact nature" of this term. *Snapp*, 208 F.3d at 934 (determining the meaning of the term "legal relief" as used in a statute). The principle of *ejusdem generis* further instructs courts to "interpret 'a general term . . . in light of the specific terms that surround it.'" *Id.* (quoting *Hughey v. United States*, 495 U.S. 411, 419 (1990)). In addition, "where Congress knows how to say something but chooses not to, its silence is controlling. In addition, a term appearing in several places in a statutory text is generally read the same way each time it appears." *CBS Inc.*, 245 F.3d at 1226 (internal citations and quotations omitted).

Applying these canons of statutory construction, I conclude that the plain meaning

7

is evident from the language of the statute. Subsection § 1681c(g) plainly prohibits (1) a person accepting debit or credit cards for the transaction of business (2) from "electronically print[ing]" prohibited information (3) on a "receipt" (4) "provided to the cardholder at the point of the sale or transaction." 18 U.S.C. § 1681c(g). To assert a claim, Plaintiff must demonstrate, through proper allegations, that MovieTickets.com (the "person" accepting the credit card for the transaction of business) printed the proscribed information upon a receipt "provided" to the cardholder at the "point of sale or transaction." That is not what Plaintiff has alleged here.

Contrary to the plain words of the statute, Plaintiff, in essence, asserts in his Complaint that MovieTickets.com violated § 1681c(g) because (1) the e-mail "order confirmation" itself from MovieTickets.com, regardless of whether Plaintiff printed it from his computer, is somehow a receipt subject to § 1681c(g), and/or (2) Plaintiff himself, not MovieTickets.com, printed his e-mail "order confirmation" from his personal computer. The language of § 1681c(g), however, does not support either argument.

In order to conform his allegations to the statute, Plaintiff makes several spurious "plain language" arguments. First, Plaintiff argues that a merchant need only to have provided, but not printed, a "receipt" in order to fall under the control of § 1681c(g). See Pl.'s Br. at 5. Second, Plaintiff argues that Congress' inclusion of the words "other machine or device" in addition to "cash register" in § 1681c(g) provides that the subsection applies to an online "receipt." Pl.'s Br. at 6. I reject both of these arguments, as explained below.

A.    By emailing Plaintiff an "Order Confirmation," Defendant has not printed a receipt under 1681c(g).

The plain language of § 1681c(g) restricts the statute to information provided on

8

electronically printed receipts provided to the cardholder.  The clear intent, therefore, on

the face of the statute, is to restrict this statute to proscribed information provided on

printed receipts which can be discarded by the cardholder.  In order to determine the

ordinary meaning of a term, I may use dictionary definitions for guidance.  *CBS Inc.*, 245

F.3d at 1223.  The common meaning of the word "print," as defined in the Webster's New

World Dictionary, is:

> 1.  to mark by pressing or stamping; make a print on or in 2.  to press or
> stamp (a mark, letter, etc.) on or in a surface 3.  to draw, trace, carve, or
> otherwise make (a mark, letter, etc.) on a surface 4.  to produce on the
> surface of (paper, etc.) the impression of inked type, plates, etc. by means
> of a printing press . . .
> Webster's New World Dictionary 1130 (2d College Ed. 1972)[2].

This confirms my common sense impression that a "printed" item is something physical

and tangible that can be impressed or marked upon, such as a printed paper.

Under the canons of statutory construction, I must look at the meaning of the word

"print" within the context of the entire statute.   The word "print" should also be read the

same way each time it appears in the statute, and "print" appears in the following contexts

in § 1681c(g):

> (1)    . . . no person that accepts credit cards or debit cards for the
> transaction of business shall print more than the last 5 digits . . .
> (2)    . . . only to receipts that are electronically printed, and shall not apply
> to transactions in which the sole means . . . is by handwriting or by an
> imprint or copy of the card.
> (3)    . . . any cash register or other machine or device that electronically
> prints receipts . . .
> 18 U.S.C. § 1681c(g).

---

[2]

"Print," as defined in the online Merriam-Webster Dictionary, is (1)(a) "to impress
something in or on" (b) "to stamp (as a mark) in or on something."  Merriam-Webster
Dictionary, htto://www.m-w.com, (last visited Feb. 7, 2008).

Considering how the word "print" is used in other places in § 1681c(g), it is clear that in the context of subsection (g) and particularly in light of the "cash register or other machine or device" language, the word "print" refers to the act of imprinting something on paper or another tangible surface. In addition, the term "print" must be construed in light of the use in § 1681c(g) of the word "receipt" and the requirement that such receipts be "provided at the point of sale or transaction." When § 1681c(g) is looked at as a whole, it is clear that this subsection focuses on paper receipts electronically printed by a cash register or other machine and provided to consumers at the point of sale or transaction.

Here, Plaintiff does not allege that Defendant ever sent Plaintiff a physical, paper copy of the emails at issue. Nevertheless, Plaintiff argues that the email was "printed" by means of its transmission via the internet and its appearance on Plaintiff's computer screen. This is contrary to the plain meaning of "print" within the context of § 1681c(g), and I conclude that Defendant has not "printed" a receipt subject to § 1681c(g) when it sends a customer an email confirmation which is only transmitted via the internet.

Although Plaintiff argues that the emails transmitted by Defendant should trigger the restrictions in § 1681c(g), the language of the statute only addresses printed receipts. Congress included no language to specifically extend the statute's restrictions to email transmissions, and such silence is controlling. *See CBS Inc.*, 245 F.3d at 1226. Similarly, Plaintiff requests that this Court construe § 1681c(g) into an omnibus Internet regulatory scheme, in essence arguing that any data appearing on a computer screen or held by a computer is subject to the statute's reach. Congress could have spoken on this issue in § 1681c(g) but did not, and I decline to construe § 1681c(g) in the way requested by Plaintiff.

10

Plaintiff also cites to several uncontrolling district court opinions where motions to dismiss were denied in cases brought under § 1681c(g). The majority of these cases involve allegations that are factually distinct from this case; the plaintiffs in those cases did not allege that they received receipts in the form of on-screen emails. *See Ehrheart v. Bose Corp.*, 2008 WL 64491, *2 (W.D. Pa. Jan. 4, 2008) (where plaintiff ordered from defendant by phone, and defendant shipped the paper receipt at issue in the case along her order); *Harris v. Wal-Mart Stores, Inc.*, 2007 WL 3046162, *2 (E.D. Ill. Oct. 10, 2007) (denying motion to dismiss where "[defendant] explains that the receipt in question was displayed on a computer screen for viewing, as opposed to having been provided to [plaintiff] in paper form. Through it may have accurately portrayed the facts of this case, [defendant] goes beyond [plaintiff's] Complaint.") Two district courts have addressed similar allegations and denied motions to dismiss. *See Grabein v. 1-800-Flowers.com, Inc.*, Case No. 07-22235 (S.D. Fla. Jan. 29, 2008) (Huck, J.); *Vasquez-Torres v. Stubhub, Inc.*, 2007 U.S. Dist. LEXIS 63719 (C.D. Cal. July 2, 2007). I decline to follow these two cases because neither considered the plain meaning of the word "printed," within the context of the entire § 1681c(g), as discussed previously in this order[3].

---

[3]

The court in *Grabein* determined that an emailed receipt could fall under the language in § 1681c(g) and denied the motion to dismiss. *See Grabein*, Case No. 07-22235. *Grabein* concluded that the dictionary definition of the word "print" leaves "room to conclude that a computer screen is another surface that can be marked," *id.* at 4, and found that such an interpretation was supported by legislative history. However, *Grabein* did not consider subsection §1681c(g) as a whole, and the opinion makes no mention of the meaning of "print" in §1681c(g)(3) as it relates to "cash registers and other machines or devices." Based on my examination of § 1681c(g) as a whole, I decline to reach the same conclusion that the Court reached in *Grabein*.

11

B.     Where Plaintiff himself printed a paper copy of his emails, those paper copies were not provided by Defendant.

Plaintiff also seems to argue that if Plaintiff himself prints a paper copy of the emails, then the emails would be subject to § 1681c(g). Based on my application of the canons of statutory interpretation, I reject this argument as well. Subsection 1681c(g) provides that "no person that accepts credit cards or debit cards for the transaction of business shall print . . ." § 1681c(g)(1). The plain meaning of "person" must be read in context with the rest of the statutory provisions in § 1681c(g). The "person accepting the credit card" clearly refers to the "merchant," not the consumer. Obviously, the consumer does not "accept" his or her own credit card. In limitations section in § 1681c(g)(3), Congress made it clear that the electronically printed receipts are to be provided by the merchant to the cardholder. To do so, the merchant is required to make sure that the proscribed information is not included on any electronically printed receipt from the merchant's "cash register" or other machine, depending on the date the devise was put in service. Therefore, under the plain meaning of the statute, it is the "person" accepting the credit cards who must do the printing.

Based on the allegations in the Complaint, the Plaintiff was not the "person" accepting the credit cards. The plain language of the statute expressly requires that the person accepting such credit cards be the party both printing and providing the receipt. Plaintiff cannot satisfy the requirements of § 1681c(g) by printing the alleged "receipt" himself, and Plaintiff does not allege that MovieTickets.com ever gave or sent him a paper copy of his order confirmation email. Therefore, based on Plaintiff's allegations, MovieTickets.com could not have "provided" Plaintiff with that printed copy of the email.

12

C.   Because the plain meaning of the statute is clear, I do not assess legislative history.

Although both parties discuss the legislative history of this statute, "[a]bsent a clearly

expressed legislative intention to the contrary, that language [of the statute] must ordinarily

be regarded as conclusive." *United States v. Mount Sinai Med. Ctr. of Florida, Inc.*, 486

F.3d 1248, 1251 (11th Cir. 2007); *United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998)

("Review of legislative history is unnecessary unless a statute is inescapably ambiguous.").

Under the law of this Circuit, ambiguity in a statute must be shown before a court resorts

to legislative history, and "[a]ny ambiguity in the statutory language must result from the

common usage of that language, not from the parties' dueling characterizations of what

Congress 'really meant.'" *CBS Inc.*, 245 F.3d at 1224-25.

Thus, "[w]hen the statute's language is plain, the sole function of the courts–at least

where the disposition required by the text is not absurd–is not enforce it according to its

terms." *Mount Sinai*, 153 F.3d at 1252 (quoting *Hartford Underwriters Ins. Co. v. Union

Planters Bank*, 530 U.S. 1, 6 (2000)); *CBS Inc.*, 245 F.3d at 1228 ("[I]t is irrelevant that we

may not have made the same policy decision had the matter been ours to decide if we

cannot say that it is absurd, ridiculous, or ludicrous for Congress to have decided the

matter in the way the plain meaning of the statutory language indicates it did.") (internal

quotations omitted). As articulated by the Eleventh Circuit, "[w]e do not start from the

premise that [the statutory] language is imprecise. Instead, we assume that in drafting

legislation, Congress said what it meant." *CBS Inc.*, 245 F.3d at 1222.

As discussed above, I conclude that the meaning of § 1681c(g) is clear based on

13

its plain language, and that the restrictions in § 1681c(g) apply to tangible, paper receipts provided by merchants to cardholders. I additionally conclude that the result of my analysis–that the emails sent by Defendants are not "printed" and provided to the cardholder based on the allegations before me–is not absurd, nor is it demonstrably at odds with the intentions of the statute's drafters. Therefore, I do not review the legislative history of § 1681c(g) "to create an ambiguity where there is none." *Mount Sinai*, 153 F.3d at 1252.

Even if I had not concluded that dismissal of this case is required, based on the reasons stated above, I would dismiss this case for insufficient allegations of willfulness. As stated previously in this order, 15 U.S.C. § 1681n(a) provides that any person who "willfully fails to comply" may be liable to the consumer, and Plaintiff seeks damages under § 1681n. Compl. at 3, 10. However, Plaintiff makes only conclusory allegations of willfulness in his Complaint. Because Plaintiff's desired interpretation of the word "print" is not clear from the statute, even if I held that such an interpretation were consistent with § 1681c(g) as a whole, Plaintiff has not pled facts from which the Court can infer that MovieTickets.com willfully violated the statute.

Accordingly, it is hereby ORDERED AND ADJUDGED that

1. The Motion to Dismiss [DE 11] is GRANTED.

2. Plaintiff may file an amended complaint within 20 days of the docketing of this order. If Plaintiff does not file a timely amended complaint, this dismissal shall be with prejudice.

14

DONE AND ORDERED in Chambers in Miami, Florida this ___*13*___ day of February, 2008.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge William C. Turnoff
All counsel of record

15