## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SUSAN G. PITTS, | ) | |
| INDIVIDUALLY, AND ON | ) | |
| BEHALF OF ALL OTHER | ) | |
| SIMILARLY SITUATED, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL ACTION NO. |
| | ) | 2:07-CV-02248-JEO |
| V. | ) | |
| | ) | |
| FISERV, INC. d/b/a BILLMATRIX | ) | |
| CORPORATION, FISERV | ) | |
| SOLUTIONS, INC. | ) | |
| DEFENDANTS. | ) | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT FISERV, INC. d/b/a BILLMATRIX ("BILLMATRIX") AND FISERV SOLUTIONS, INC.'S ("FISERV") MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF

### I.   INTRODUCTION

Plaintiff brought the instant action as a putative class action against Fiserv d/b/a Billmatrix, as a result of her receipt of an electronic or electronically generated receipt provided to her by the Defendants at the conclusion of an online payment transaction via Defendants' website. This action was brought pursuant to the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), and more specifically 15 U.S.C. § 1681c(g). FACTA was designed to provide landmark protections against credit card fraud and identity theft by lessening the risk of sensitive personal

information falling into the hands of would-be criminals. To that end, Congress mandated truncation of all non-handwritten or non-imprinted credit/debit card receipts. 15 U.S.C. § 1681c(g). No more than the last five digits of a credit card number may be printed on a receipt. *Id.* Credit card expiration dates may never be printed. *Id.* [1]

The need to "truncate" receipts was thus widely accepted even before passage of FACTA. For example, on March 6, 2003, Carl Pascarella, the CEO of Visa USA, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003. Within 24 hours, MasterCard and American Express stated that they were doing the same thing. "Visa Joins Lawmakers in Fighting Identity Theft," Orange County Register, March 7, 2003.

---

[1] For a succinct and cogent analysis of Congressional intent with respect to omission of the expiration date, see Aeschbacher v. California Pizza Kitchen, Inc., 2007 WL 1500853 (C.D.Cal.)

Thus, the major credit card issuers imposed the truncation requirement as a matter of contract even before it was mandated by FACTA. The August 12, 2006, edition of "Rules for Visa Merchants", which is binding upon all merchants that accept Visa cards, similarly makes clear that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." VISA required complete compliance by merchants accepting Visa card by July 1, 2006, five months ahead of the statutory deadline. *Id.*

Defendants' receipts, which are provided to their customers via the internet as part of an online consumer transaction, include personal information including the last four digits of the credit card and the card's expiration date. By printing their customer's credit card expiration date, Defendants indisputably violated FACTA.

In their motion to dismiss, Defendants assert several defenses to their clear violation of FACTA's provisions. First, Defendants attempt to shirk liability because they did not provide a "physical" receipt. Second, Defendants attempt to ensnare this Court in a tortured statutory construction argument premised upon an antiquated definition of the word "print". Said definition can be found in Merriam-Webster's Collegiate Dictionary, specifically the 1995 edition. This august tome clearly predates any

contemplation by Congress or the general public that e-commerce would have the impact on everyday life it currently enjoys. Third, Defendants attempt to rewrite over ten years of contractual common and statutory law by insisting that "point of sale" can mean only a physical location, not an internet transaction. Were this Court to carry Defendants' proposed definition of point of sale to its logical conclusion, any sale occurring outside of a physical location, i.e. a store front, would not actually constitute an enforceable transaction. Fourth, Defendants cite to 15 U.S.C. § 1681 c(g)(3), a provision dealing with the effective date of the statute with respect to preexisting versus new cash registers or other machines or devices that electronically prints receipts for transactions, for the proposition that Plaintiff's failure to specifically enumerate which device in Defendants' possession is responsible for the provision of the violative receipt, or the inner workings of Defendants' computer system which caused Plaintiff's monitor to display a noncompliant receipt, should constitute grounds for dismissing Plaintiff's claims. As Plaintiff will demonstrate, Defendants' verbal gymnastics, while clever, fail to meet the requirements of this Court in order to succeed on a motion to dismiss.

## II. STANDARD OF REVIEW FOR MOTION TO DISMISS

The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the complaint. Rule 12(b)(6) should be read along side Fed. R. Civ. P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. "The rule was not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." *See* 5 Charles A. Wright & Arthur Miller, Federal Practice and Procedure (cited with approval in *Brooks v. Blue Cross and Blue Shield of Florida,* 116 F.3d 1364 (11th Cir. 1997). In reviewing a motion to dismiss, all well-pleaded facts in Plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992).

The United States Supreme Court has stated that the "accepted rule" for appraising the sufficiency of a complaint is, "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)*; Tiftarea*

*Shopper, Inc. v. Georgia Shopper, Inc.,* 786 F.2d 1115, 1117-18 (11th Cir. 1986) (quoting *Conley*).

The method this Court should use in considering a defendant's motion to dismiss filed pursuant to Rule 12(b)(6) is well established. First, the only record to be considered is the Complaint. Therefore, all well pleaded factual allegations in the plaintiff's complaint are the focus of the determination. *Dalrymple v. Reno, 3*34 F.3d 991, 994-96 (11th Cir. 2003) (alterations omitted) (citing *United States Dep't of State v. Ray,* 502 U.S. 164, 179 (1991). Plaintiff has pleaded, specifically, "Defendants, at the point of sale or transaction, provided Plaintiff with an electronically printed receipt." See Plaintiff's Complaint ¶ 11.

Second, as noted above, a motion to dismiss should only be granted where the defendant shows, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, (1957). At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff. *See Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir.1998).

## III. FACTA APPLIES TO ONLINE TRANSACTIONS

A. The Plain Language of FACTA Encompasses Online Transactions and Receipts

From the outset it should be noted that FACTA is a consumer protection and crime prevention statute that is, and should be, liberally construed in favor of the consumer. *See Bragg v. Bill Heard Chevrolet, Inc.*, 374 F. 3d 1060, 1068 (11th Cir. 2004) (construing TILA "liberally in the consumer's favor."); *Barnes v. Fleet Nat'l Bank, N.A.*, 370 F.3d 164, 171 (1st Cir. 2004) (same); *Ellis v. Gen. Motors Acceptance Corp.*, 160 F. 3d 703, 707 (11th Cir. 1998) (noting that consumer protection statutes "must be construed liberally in order to best serve Congress' intent."); *Maldonado v. Collectibles Int'l, Inc.*, 969 F. Supp. 7, 8 (S.D.N.Y. 1997) ("statutes promoting the public good are liberally construed.").

Defendants would have this Court believe that online transactions are exempt from FACTA's truncation requirements.[2] However, Defendants have failed to raise sufficient ambiguity with respect to the operative words contained in the statute to compel this Court to embark on an exercise in lexicology with respect to internet technology. Merriam-Webster's website defines one possible definition of "print" as "to display on a surface (as a

---

[2] Defendants' Motion to Dismiss at 4.

computer screen) for viewing." www.merriam-webster.com/dictionary/print. Defendants' acknowledge the inconvenience of the inclusion of this definition of print in their motion to dismiss. However, Defendants mistakenly ascribe significance to the definition's ordinal placement as being hierarchical.[3] Counsel perhaps recalls the long-defunct dictionary pronunciation guidelines instead, wherein the first listed pronunciation was the preferred pronunciation. There has never been any such distinction with respect to the order of definitions, as all terms included within a definition are logically relevant and applicable to the word defined.

Further, Congressional intent should not be examined barring unclear language in the text of the statute itself. See *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 565 (2005). When determining the scope of available remedies, courts rely on the plain language of a statute. The starting point for interpreting a statute is the language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, (1980). It is also the stopping point "…if a statutory language is unambiguous and the statutory scheme is coherent and consistent." *Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, (2002)(quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 350, (1997). The Supreme Court has said, "We have

---

[3] *Id.* at 15.

stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Barnhart* at 461-2.

FACTA does not define the term "print", thus, the Court should construe the statute to give the term its ordinary meaning. *BP Am. Prod. Co. v. Burton*, 127 S.Ct. 638, 643. (2006). Since the statute does not define the term "print," the Court must give the term its ordinary meaning. *Nat'l Coal Ass'n v. Chater*, 81 F.3d 1077, 1081 (11th Cir. 1996). However, "'this plain-meaning rule should not be applied to produce a result which is actually inconsistent with the policies underlying the statute.'" *Siemens Power Transmission & Distribution, Inc. v. Norfolk S. Ry. Co.*, 420 F.3d 1243, 1252 (11th Cir. 2005) (quoting *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1068 (11th Cir. 2004)). Defendants acknowledge in their motion to dismiss that the intent of Congress in passing FACTA was to reduce identity theft.[4] Defendants' arguments are all predicated on the proposition that the words "print", "upon", "point of sale" and "receipt" may only be read in the context of a physical exchange of a paper receipt. This is patently absurd. Congress has enacted numerous other regulations dealing specifically with

---

[4] *Id.* at 5.

the methods by which internet transfers are defined and regulated. For example, Congress has defined electronic fund transfer as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone." 15 U.S.C. 1693a. In fact, §1681a, FACTA's definitional section, specifically references §1693a, stating "the terms 'account' and 'electronic fund transfer' have the same meanings as in section 1693a of this title. 15 U.S.C. 1681a. Congress was aware of internet commerce and the attendant risks of identity theft at the time of enactment of FACTA.

Congress has also passed the Uniform Electronic Transfers Act, which effectively obviates the need for a physical signature on any transaction affecting interstate commerce. 15 U.S.C.A. §7001 *et seq.* In *Campbell v. General Dynamics Government Systems Corp.*, the court ruled that the Electronic Signatures in Global and National Commerce Act (E-Sign Act), 15 U.S.C.A. §§ 7001 to 7031, likely precluded any flat rule that a contract to

arbitrate was unenforceable as to employment discrimination claims under the Americans with Disabilities Act solely because its promulgator chose to use e-mail as the medium to effectuate the agreement. 407 F.3d 546, 16 A.D. Cas. (BNA) 1361, 151 Lab. Cas. (CCH) P 60002 (1st Cir. 2005. Similarly, this Court should find that Defendants' choice to avail themselves of e-commerce does not preclude them from compliance with clearly stated and unambiguous federal laws.

In *In re Cafeteria Operators, L.P.*, the court pointed out that the E-Sign Act provided that, "a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form," that "a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation," and the E-Sign Act did not "limit, alter, or otherwise affect any requirement imposed by a statute, regulation, or rule of law relating to the rights and obligations of persons under such statute, regulation, or rule of law other than a requirement that contracts or other records be written, signed, or in non-electronic form." 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003). Thus, the court observed, in transactions involving interstate commerce, e-mails constituted "writings," that the instant e-mails clearly

qualified for the requirement in 15 U.S.C.A. § 7001(a) that the transaction was in or affected interstate commerce, and that the e-mails between the parties satisfied the writing requirement.

B. Defendant "Printed" the Expiration Date on the Receipts

According to its website, FiServ d/b/a/ BillMatrix "provides secure, hosted, web-based payment services which provide a method for your customers to make payments." Plaintiff, like the Defendants' other internet customers, entered her order and credit card information online, after which, the Defendants provided her a "payment receipt" through its website. By Defendants own terminology, the electronic document was a receipt. Additionally, the instructions on the BillMatrix payment website included the explicit instructions, "Please print the following summary information for your records." Defendants' receipt is intended to be printed and retained by their customers, thus further memorializing Defendants' violation of FACTA. The receipt also includes other personal information which could be used to purloin Plaintiff's identity, in addition to the last four digits of the credit card number and the card's expiration date.

Defendants' receipts are subject to FACTA because they printed expiration dates on their receipts provided to customers. Defendants concede that they in fact provided both the last four digits and the expiration date,

choosing only to take issue with whether sending a self-proclaimed "payment receipt" via the internet to Plaintiff's computer constitutes "print" within the meaning of the statute. FACTA states that no merchant "shall *print … the expiration date upon any receipt provided to the cardholder*…." 15 U.S.C. § 1681c(g)(1) (emphasis added). "Print" is commonly defined as: (a) "to display on a surface (as a computer screen) for viewing," *see* Merriam-Webster's Collegiate Dictionary, 10th ed. P. 924 (2002); or (b) "*Computers*. to produce (data) in legible alphanumeric or graphic form," *See* Random-House Unabridged Dictionary (2006) available at www.dictionary.com. More importantly, print modifies the information to be included or excluded on the receipt provided to the consumer. It does not define the mechanism by which the merchant provides the receipt, beyond the limitation that hand written or processed with a manual credit card machine. It applies to all electronic transactions.

A virtually identical factual situation was presented to the court in *Vasquez-Torres v. Stubhub, Inc.* 2007 U.S. Dist. LEXIS 63719. The district court in *Stubhub* concluded that "Plaintiff's interpretation of print, including information transmitted to a computer screen, better comports to the purposes of FACTA than [Stubhub's] narrow definition." *Id.* at *9. It specifically held that Stubhub's online receipts qualify even under the

merchant's narrow definition of print because the merchant "made an impression" on its customer's computer screen. *Id*.

FACTA expressly applies to "any cash register *or other machine or device* that *electronically prints* receipts…." 15 U.S.C. § 1681c(g)(3)(A)-(B) (emphasis added). By including the generic phrase "other machine or device" rather than limiting its application to just "cash registers," Congress emphasized its intent for FACTA to cover <u>all</u> receipts, except those expressly exempted. Clearly a computer and computer network used to electronically transact business qualifies as a "machine or device."

*Stubhub* is indistinguishable from this case. Plaintiff and others similarly situated have no input as to what information is printed on the receipts. Consumers cannot protect themselves from the risk of identity theft except to refuse to transact business with the Defendants. Defendants, not their customers, determine what personal information is printed on the receipts, and, Defendants, not customers, incur liability and are responsible when they willfully print information which violates FACTA.

In *Grabein v. 1-800-Flowers.com, Inc.*, upon entertaining an identical argument to dismiss premised primarily on the nature and effect of an online receipt, the court refused to dismiss plaintiff's claims, holding that defendants failed to demonstrate that plaintiff's interpretation of either

"print" or "point of sale" as used in §1681c(g) were unreasonable, that defendants could not establish that plaintiff could not recover as a matter of law based on the facts he has alleged, and that plaintiff stated a legally cognizable claim under § 1681c(g). *Grabein v. 1-800-Flowers.com, Inc.*, 07-22235 (S.D. Fla. Jan. 29, 2008). See Exhibit A, Order on Defendants Motion to Dismiss.

*Harris v. Wal-Mart* is yet another example of a court failing to dismiss a factually identical case to the case before this Court, wherein the Defendants moved to dismiss on the basis that a receipt was electronically presented to the plaintiff via the internet. *Harris v. Wal-Mart,* 07 CV 2561 (N.D. Ill. Oct. 10, 2007). The court denied the defendant's motion to dismiss.

Only two types of receipts are specifically exempted by FACTA and neither is at issue here. *See* 15 U.S.C. § 1681c(g)(2)(expressly exempting "handwritten" and "imprinted" credit card receipts where the merchant runs a sheet of paper over the credit card.) Had Congress intended to exempt online receipts and transactions, it could have easily included them among the types of exempt receipts. Congress' failure to do so while exempting manually generated receipts clearly indicates their intent to make FACTA binding on internet businesses. Section 1681c(g)(1) contains a general

prohibition against printing credit and debit card receipts with expiration dates on them. In fact, the prohibition is so general that Congress chose to use the words, "unless otherwise provided."

### C. Defendants Provided the Receipt to Plaintiff at the Point of Sale

As defined by dictionary.com, point of sale means "of or pertaining to a customer-checkout system that uses automated devices linked to a computer, as a terminal (point-of-sale terminal) that directly transmits sales data as part of a computerized system for accounting and inventory control. *Dictionary.com Unabridged (v 1.1)* Based on the *Random House Unabridged Dictionary*, 2006.

Defendants' receipts are subject to FACTA because the Defendants provided the receipt to Plaintiff through its interactive website. Defendants repeatedly and intentionally confuse the "print" element with the "provide" element of the statute. Defendants violated FACTA when they printed certain impermissible information on a receipt that they provided the Plaintiff. They cannot deny that they "provided" the receipt through their e-commerce website. Instead of arguing that they did not provide the receipts, Defendants contend that the receipt was not provided at the "point of the sale or transaction" because there was no physical place where the transaction

occurred. A modern analysis of point of sale unquestionably includes the Defendants' internet transactions.

At least three federal appellate decisions have considered the meaning of "point of sale" in an age of modern commerce. All have concluded that the point of sale for a transaction is the place where the consumer makes the purchase, including home based Internet transactions.

In *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1333 (Fed. Cir. 2001), the Federal Circuit expressly held that "a point of sale location is simply the location at which the consumer makes or effects a purchase." The issue in *Interactive* was whether an internet service provider's website, which allowed consumers to make e-commerce transactions from home, infringed a patent relating to point of sale transactions. *Id.* There, the Federal Circuit reversed the district court's ruling that a consumer's home cannot be a point of sale. *Id.*

Similarly, in *General Motors Corp. v. Keystone Automotive Indust.*, 453 F.3d 351, 355 (6th Cir. 2006), the Sixth Circuit ruled in a trademark infringement action that "point of sale" refers to the time of the purchase without regard to the purported place of the transaction. There, the Sixth Circuit noted that the "points of sale" for the potentially infringing merchant included both physical stores <u>and</u> direct to consumer internet sales. *Id.* The

court found no likelihood of confusion at the point of sale because no matter where the transactions occurred – internet or physical store – the merchant properly disclaimed the origins of the products for sale. *Id.*; *see also Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP,* 423 F.3d 539, 550, n. 15 (6th Cir. 2005) (noting that courts have routinely applied the "likelihood of confusion at the point of sale analysis" to Internet transactions).

### D. The Legislative History Supports FACTA's Application to Online Transactions and Receipts

FACTA's legislative history further supports the Plaintiff's reading of the statute and its application to online transactions. The Senate's Banking, Housing and Urban Affairs Committee conference report concluded: "The burgeoning use of the Internet and advanced technology, coupled with increased investment and expansion, has intensified competition within the financial sector. Although this provides benefit to the consumer through readily available credit and consumer-oriented financial services, it also creates a target-rich environment for today's sophisticated criminals, many of whom are organized and operate across international borders." S. Rep. 108-166, 2003 WL 22399643, *8 (Oct. 17, 2003).

Similarly, the House Committee conference report concluded: "Since 1996, the national credit markets have undergone significant change. Most

of these changes were the result of technological innovations . . . Despite the myriad benefits of technology to the American consumer, there has been one drawback. Namely, the free flow of information has enabled the explosive growth of a new crime – identity theft." H.R. Conf. Rep. 108-396, 2004 U.S.C.C.A.N. 1753, 2003 WL 22761472 (Nov. 21, 2003).

Finally, the opening sentence of FACTA, Public Law 108-159, which was later codified in the U.S. Code, states: "An Act to amend the Fair Credit Reporting Act, to prevent identity theft…." P.L. 108-159, 117 Stat 1952. Defendants' argument – that FACTA does not apply to online transactions and receipts – is entirely illogical and unreasonable given Congress' overwhelming concern that the Internet was being used as a tool by identity thieves.

If Congress intended to exclude such a large and significant part of the American economy from FACTA, then it would have done so expressly. *See Stubhub*, U.S. Dist. LEXIS 63719 (holding that Congress' "failure to [expressly exempt online transactions] supports Plaintiff's interpretation of 'print'…"). The plain language of the statute, as well as the legislative history and stated purpose of the statute, all support Plaintiff's position that FACTA applies to online transactions and the Defendants' receipts.

Wherefore, premises considered, based on the facts alleged in the complaint and the citation of authority and argument above, the Defendant's Motion to Dismiss is due to be denied.

Respectfully submitted,

/s/ William K. Bradford (BRA079)
Attorney for Plaintiff

**OF COUNSEL:**
BRADFORD-PITTS L.L.C.
1130 22nd Street South, Suite 4500
Birmingham, Alabama 35203
(205) 939-4300
wkb@southlawllc.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF to all parties or their attorney of record on this the 21st day of March, 2008.

William H. Morrow
Lightfoot Franklin White LLC
400 20th Street North
Birmingham, AL 35203-3200

and

John Volney
Lynn Tillotson & Pinker, L.L.P.
750 N. St. Paul Street, Suite 1400
Dallas, TX 75201