FILED
2008 Mar-21  PM 10:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO.: 07-22235-CIV-HUCK**

WAYNE GRABEIN, individually, and on
behalf of all others similarly situated,

    Plaintiff,
vs.

1-800-FLOWERS.COM, INC., a foreign
corporation for profit, and 1-800-FLOWERS
RETAIL, INC., a foreign corporation for
profit,

    Defendants.
_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint. Plaintiff Wayne Grabein, on behalf of himself and others similarly situated, filed a Class Action Complaint, filed August 27, 2007 [D.E. #1], alleging that Defendants 1-800-Flowers.com, Inc. and 1-800-Flowers Retail, Inc. (collectively "1-800-Flowers") violated the Fair Credit Reporting Act ("FACTA"), a law enacted to help combat identity fraud and identity theft. 1-800-Flowers, a Delaware corporation with its principal place of business in Carle Place, New York, is a flower retailer, which sells and delivers flowers via telephone and the internet.

**I.     BACKGROUND**

This case arises out of Plaintiff's online purchase of flowers that generated an electronically transmitted receipt, which included Plaintiff's credit/debit card expiration date. Plaintiff claims he is entitled to relief under 15 U.S.C. § 1681c(g), an amendment to the FACTA enacted in 2003, which provides: "No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." Plaintiff alleges that 1-800-Flowers "provided and/or printed the expiration date of Plaintiff's credit card or debit card on a receipt," *see* Compl., ¶

10, after Plaintiff used 1-800-Flowers's "internet site to make a consumer transaction and was provided with a receipt for his purchase." Compl., ¶ 5. Plaintiff is seeking statutory damages, punitive damages, costs and attorneys fees, and a permanent injunction.

Defendants now move for dismissal for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Defendants contend that § 1681c(g) is unconstitutionally vague as applied to the facts here. Finally, Plaintiffs urge the Court to deny class certification.

## II.   DISCUSSION

### A.   Standard

In reviewing a motion to dismiss, all well-pleaded facts in Plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that Plaintiff can prove no set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir. 1982). Nonetheless, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). The federal rules do not require a claimant to set out in detail all the facts upon which the claim is based. *Id.* at 47. All that is required is a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2).

### B.   Failure to State a Claim under § 1681c(g)

The relevant portion of FACTA at issue here states that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." § 1681c(g). 1-800-Flowers argues that based on its language, § 1681c(g) applies only to transactions where the seller, not the consumer, "prints" the receipt for the consumer at the location of the transaction – for example, an over-the-counter exchange of money for goods. Furthermore, 1-

800-Flowers argues that Congress intended the statute to cover only receipts printed at a specific point of sale – like a retail establishment – and not receipts transmitted electronically. 1-800-Flowers thus moves to dismiss Plaintiffs' Complaint under Rule 12(b)(6) because it claims that receipts provided electronically are not sufficient to satisfy the statute's mandate that the seller "print" the consumer's credit/debit card expiration date on the electronically transmitted receipt "at the point of sale." Plaintiff counters by arguing that the term "print" is broad enough to encompass the information a seller transmits on an electronic receipt, and that such a reading of the term comports with Congress's legislative goals when it passed § 1681c(g).

We must begin our inquiry into the meaning of "print" by looking to the language of the statute. *Consolidated Bank, N.A., Hialeah, Fla. v. U.S. Dep't of Treasury*, 118 F.3d 1461, 1463 (11th Cir. 1997). Although this Court is required to view all facts in favor of the nonmoving party, it is not required to accept as true the nonmoving party's interpretation of a statutory term. And since the statute does not define the term "print," the Court must give the term its ordinary meaning. *Nat'l Coal Ass'n v. Chater*, 81 F.3d 1077, 1081 (11th Cir. 1996).

In beginning its interpretation of a statute, the Court must attempt to carry out Congress's legislative intent. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 955 (11th Cir. 2007). The first step in this analysis is to figure out "the plain meaning of the statute's language, based on the words' "ordinary, contemporary, common meaning." *Id.* (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)). But "'this plain-meaning rule should not be applied to produce a result which is actually inconsistent with the policies underlying the statute.'" *Siemens Power Transmission & Distribution, Inc. v. Norfolk S. Ry. Co.*, 420 F.3d 1243, 1252 (11th Cir. 2005) (quoting *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1068 (11th Cir. 2004)). In addition, consumer-protection statutes should be liberally construed in favor of the consumer. *See Bragg*, 374 F.3d at 1068 (rejecting the district court's narrow interpretation of terms of Truth in Lending Act when it "undermine[d] the ability of prospective consumers of credit to weigh competing offers").

First, the Court finds that the ordinary meaning of the term "print" encompasses the

information included when a seller electronically transmits a receipt. To guide statutory interpretation, courts often turn to dictionaries to illuminate the ordinary meaning of statutory terms. *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1264 (11th Cir. 2004). Defendants assert that the Court should rely on the Oxford English Dictionary, which defines "print" as "[t]o make or produce (text, a book, a picture, etc.) by a mechanical process involving the transfer of characters or designs on to paper, vellum, etc., esp. from inked blocks, types or plates." Oxford English Dictionary (Draft 3d ed. 2007). But the Oxford English Dictionary also defines "print" as "to set . . . on any surface, by . . . writing," though that definition appears under "General senses" and not in the general typography section. In the general typography section, the Oxford English dictionary also defines "print" as "[t]o mark (paper, etc.) with printed characters . . . ." The word "mark" is not limited to specific surfaces; instead, "paper" is listed as one example of a surface that can be marked, leaving room to conclude that a computer screen is another surface that can be marked.

Moreover, Plaintiffs cite other definitions to illustrate that the term "print" as used in § 1681c(g) is broad enough to encompass information a seller includes on an electronically transmitted receipt. Plaintiff defines "print" as "to display on a surface (as a computer screen) for viewing." Merriam-Webster's Collegiate Dictionary, 10th ed. p. 924 (2002). Because both Defendants' and Plaintiff's definitions of "print" are broad enough to encompass the information included when a seller transmits an electronic receipt, Plaintiff's Complaint here is consistent with the claim that Defendants "mark[ed]" his computer screen "with printed characters" when it transmitted an electronic receipt with his credit card expiration date contained on it.

The only other court to confront the definition of "print" in FACTA arrived at the same result. In *Vasquez-Torres v. Stubhub, Inc.*, 2007 U.S. Dist. LEXIS 63719, *7 (C.D. Cal. July 2, 2007), the defendant there pointed to the definition of "print" contained in Webster's Third New Int'l Dictionary, which defined "print" as "to make an impression in or upon." But the court there held that "even under Defendant's definition . . . . Plaintiff's [amended complaint] is consistent with the claim that Defendant 'made an impression' on the Plaintiffs [sic] computer screen including credit card or debit

card information in violation of 15 U.S.C. § 1681c(g)." *Id.* at *7.

Furthermore, the underlying purpose of FACTA ensures that electronically transmitted receipts fall within the statute's sweep. The court in *Vasquez-Torres* reasoned that "Plaintiffs interpretation of print, including information transmitted on a computer screen, better comports to the purposes of FACTA than Defendant's narrow definition." *Id.* at *9. The same reasoning applies here for two reasons. First, Congress's aim in passing FACTA was to reduce the chance that a consumer would be injured (usually through identity theft) by virtue of the inclusion of sensitive information on a credit/debit card receipt.[1] Eliminating electronically transmitted receipts from coverage of FACTA would undercut Congress's ability to stamp out identity theft in its various and rapidly changing forms, especially considering the volume of transactions that now take place online.[2] Thus, Defendant's argument that Congress aimed to reduce the likelihood of sensitive personal information falling into the wrong hands by mandating truncated information on in-store paper receipts while failing to mandate the same truncation requirements on electronic receipts transmitted over vulnerable digital communication lines is unreasonable.[3]

---

[1] Defendants acknowledge that the "statute was enacted by Congress to help combat identity fraud" and to "protect consumer privacy." Def.'s Mot. To Dismiss, at 3, 7.

[2] Defendants argue unpersuasively and without supporting authority that the threat of identity theft is in fact reduced when a receipt is transmitted electronically. They argue that because the consumer has already inputted his complete credit/debit card information at some point during the online transaction, a so-called hacker could simply "scroll[] back" between screens to access a consumer's complete credit/debit card information. But this is speculation unsupported by any authority. In passing FACTA, Congress sought to stamp out identity theft in all its forms, including, it appears, identity theft that occurs as a result of computer hacking. *See* S. Rep. 108-166, 2003 WL 22399643, *8 (Oct. 17, 2003) ("The burgeoning use of the Internet and advanced technology . . . . creates a target-rich environment for today's sophisticated criminals.").

[3] Defendants also point out that Congress sought to stamp out identity theft via the Computer Fraud and Abuse Act ("CFAA"), codified at 18 U.S.C. § 1030 (2007). But the CFAA is a criminal statute that generally targets so-called hackers and others, not sellers. It is completely reasonable that Congress passed two separate statutes – one that prohibits hackers and others from accessing sensitive private information, and another that prohibits sellers from providing sensitive private information on credit/debit card receipts. Both statutes aim to

Second, part of the expectation by the seller when it transmits an electronic receipt is that the consumer will print the receipt for his records. In fact, many online sellers encourage their customers to print for their records receipts transmitted electronically. Just because a seller cannot, due to technological restrictions, place a piece of paper in a consumer's hands without the consumer pressing the "print" button on his computer should not materially change the analysis under § 1681c(g). If technological restrictions did change the analysis, FACTA's reach would be restricted in a way that Congress could not have intended in light of its legislative purpose of preventing identity theft.

Contextual factors also militate in favor of finding that 1-800-Flowers "printed" Plaintiff's credit/debit card expiration date on its electronically transmitted receipt. As Plaintiff points out, Congress expressly exempted two kinds of receipts from FACTA's sweep – specifically, where the sole means of recording a credit/debit card number is by handwriting or by an imprint or copy of the card. § 1681c(g)(2). Because Congress evidently considered the types of receipts that should be expressly exempted from the FACTA, its decision not to exempt electronically transmitted receipts strongly suggests that it intended to include them within FACTA's reach. *See Vasquez-Torres*, 2007 U.S. Dist. LEXIS at *9 ("Furthermore, had Congress desired such an exclusion, they would have explicitly done so, as they did for 'transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.'").

In addition, 1-800-Flowers's argument that FACTA's reference to a "point of sale" is unclear because the point of sale for an electronic transaction "could be any number of locations" is unavailing. The one case submitted by Plaintiff (Defendant did not cite to any) where a court analyzed the meaning of the phrase "point of sale" in FACTA is *Ehrheart v. Bose Corp.*, 2008 WL 64491 (W.D. Pa. Jan. 4, 2008). In *Bose*, the plaintiff ordered headphones over the telephone to be shipped to her home. *Id.* at 2. After the Bose employee entered the information into the computer, he printed the receipt, packed it in the box with the headphones, and shipped it to the plaintiff's address. Bose argued that the

---

minimize identity theft while approaching the problem from different angles. Congress's passage of the CFAA thus does not imply that it would not also try to eradicate identity theft through other means, like FACTA.

nonconforming receipt it sent to the plaintiff was not subject to FACTA because "'point of sale' denotes a 'precise location within a store.'" Rejecting this reasoning, the court in *Bose* held that the words "point of sale" "do not appear to have a fixed meaning, but have been defined instead by the context in which they are used." *Id.* at *4. As the plaintiff in *Bose* pointed out:

> Defendant's proffered interpretation of the phrase "at the point of sale or transaction' makes no sense in the context of the statute. [It] would draw a distinction between receipts provided to the cardholder at the location of the credit/debit card machine and those receipts provided elsewhere. However, given the obvious purpose of FACTA, i.e., to prohibit the unnecessary inclusion of sensitive credit card information on customer receipts, the relevant factor is not *where* the receipt is provided to the cardholder, it is that the protected information is wholly unnecessary in the context of providing a customer receipt and its inclusion on such a receipt, no matter *where* the customer receives it, can lead to identity theft.

*Id.* at *5. The court in *Bose* went on to add in dicta that "[i]f the court were to adopt the Defendant's interpretation of FACTA, the statute would not reach the theft of information secured as the result of an online transaction, because buyers' computers are located outside of – maybe thousands of miles from – the retail premises." *Id.* at *6.

This Court concurs with the reasoning set forth in *Bose* – i.e. that limiting FACTA's reach because a consumer's computer is located far away from the presence of the seller would undermine Congress's legislative aim of preventing identity theft. The Court thus holds that Defendants have failed to demonstrate that Plaintiff's interpretation of either "print" or "point of sale" as used in § 1681c(g) is unreasonable, and Defendants therefore cannot establish that Plaintiff could not recover as a matter of law based on the facts he has alleged. Accordingly, Plaintiff has stated a legally cognizable claim under § 1681c(g), and the Court denies Defendants' Motion to Dismiss based on failure to state a claim for which relief may be granted.

    C.    **Void for Vagueness**

In the alternative, Defendants argue that § 1681c(g) is unconstitutionally vague and should be struck as applied to them in this case. "The traditional test for whether a statute or regulation is void on its face is if it is so vague that 'persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *DA Mortgage v. City of Miami Beach*, 486 F.3d 1254, 1271

(11th Cir. 2007) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).  In order to succeed on a vagueness challenge, Defendants must demonstrate that they did not have "fair warning of what constitutes a wrongdoing." *Id.*

Section 1681c(g) is not unconstitutionally vague.  The statute is a one-sentence, straightforward prohibition on printing certain sensitive private customer information on credit/debit card receipts.  Compliance therefore should not have been confusing or difficult for Defendants.  Simply truncating the customer's credit/debit card numbers and hiding the customer's credit/debit card expiration date on all electronically transmitted receipts was all § 1681c(g) required.  The statute provides clear direction for what constitutes a wrongdoing – printing more than the last five numbers of the customer's credit/debit card or printing the customer's expiration date on any receipt.  In addition, "persons of common intelligence" would not have to guess at whether the statute applied to electronically transmitted receipts because, for the reasons stated in Section II.B, it is clear that it does.

## III. CLASS CERTIFICATION

Finally, Defendants assert that Plaintiff's class claim should be dismissed or stricken.  Such an assertion is premature, however, because Plaintiff has not moved for class certification.  The Court will address arguments regarding class certification when and if the Plaintiff moves to certify a class.

## IV. CONCLUSION

For the reasons stated above, the Defendants' Motion to Dismiss is DENIED.  Defendants' shall file an Answer to Plaintiff's Complaint on or before **Thursday, February 14, 2008**.

DONE AND ORDERED in chambers, Miami, Florida, this 29th day of January, 2008.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All Counsel of Record